Good morning, honors and may it please the court. My name is Han Pai and I represent defendant and appellant Siovash Bani Hashemi, also known as Sia Bani. I'd like to reserve five minutes for rebuttal, please. All right. Thank you. We're here today on a limited issue, that is whether the district court erred in holding Mr. Bani jointly and severally liable along with two entity defendants for reimbursement of a $1 million settlement payment to the Appellee Insurance Company, USIC. We believe the answer is yes, and there are several key points which support a reversal of the district court's judgment on a de novo review. To begin, USIC never met its burden to allocate the identity payment to each of the three defendants here. Now, I believe there are three, excuse me, two primary cases that govern this issue on which are on opposite ends of the spectrum. This is the L.A. Sound versus St. Paul Fire and Marine case and the Axis Surplus versus Ray Nosial case. As we briefed, we believe L.A. Sound applies most closely to the facts here, while Axis Surplus is distinguishable. Just to pause you. So you agree, I guess, that Mr. Bani would be some portion of this $1 million could fairly be attributed to him. Do you agree with that? I believe that the analysis needs to be done to get to that conclusion, which has not been done. I understand. But do you, are you, are you, is it going to be your position if that, that he's actually at zero? Or do you think, no, in fact, there's some number between zero and a million? We believe that his potential exposure should have been zero, but it's possible that it is going to be higher than zero, between zero and a million. What other proceedings, how would we get about answering that question? So you say the work hasn't been done. What is the work that needs to be done? I believe under L.A. Sound and Axis Surplus that the insurance company needs to parse through the underlying litigation, conduct discovery, if it needs to conduct discovery to determine how those costs and indemnity payments are going to be allocated. What discovery has been conducted on this at this point in this case? In this federal coverage action case, there has been some written discovery, but as we've indicated in our briefs, we don't believe they have been targeted towards this specific question as to how the defense or even the indemnity costs have been allocated. So I think your friends on the other side say, well, we don't want to have to relitigate the underlying case that was settled. Do we need to do that in order to figure this out? I don't think so. I think that's expanding the burden that's Axis Surplus. I think that in USIC's brief, they're focusing on a portion of the district court's order that's discussing a different issue when making that relitigation comment. The portion of the order addresses the reasonableness of the settlement amount. However, it doesn't address allocation between the insurers. Those are two separate issues, and I think the two issues were conflated. I think the LA Sound and the Axis Surplus case indicates that the insurance company has the burden to make that determination and parse through the litigation to figure out what liability can be attributed to each of the three insurers. So in LA Sound, the court there refused to hold the insured entity, as well as its directors and officers, jointly liable for the reimbursement of the insurance policy because the insurance company failed to meet that burden. Their reasoning there was that it was unlikely that the insured faced the exact same liability based on the exact same conduct and were defended in the exact same way. And because there was no analysis of how those indemnity costs and defense costs were spent, it was reversed so that the trial court could make that determination. And this is very similar to the situation we have here. Although defense costs are not at issue, indemnity costs certainly are. USIC hasn't attempted to detail how that indemnity payment was split between the three bonding defendants, and instead they're seeking to hold all of them jointly and severally liable because they somehow, quote, benefited equally without regard to the exposure faced by each of them. So as briefed, and as I'll point out here again, in LA Sound, it makes very clear that the right to reimbursement may run against the person who benefits from unjust enrichment, but it should only do so to the extent the person actually benefits. So again, our position is that Mr. Bonney didn't face liability as compared with the two entity defendants. So using the, I guess, our earlier discussion on potential exposure, let's say that Mr. Bonney was, according to us, facing $0 in liability, whereas the two entities were facing something above the indemnity. Now, let's just say for the sake of argument, $1 million each, so $2 million total. So in this scenario, the indemnity payment doesn't actually extinguish any liability to Mr. Bonney because he didn't face any liability to begin with. And so it would be inequitable for Mr. Bonney to have to pay the entire $1 million when he didn't receive any benefit from the settlement. So in that situation, he'd be unfairly subsidizing the settlement for the other two insurers. I take it some of what maybe the district court was reacting to is the fact that these are closely held corporations. Is that sufficient to find him jointly and severally liable? I don't believe so. I think your Honor is referring to the application of the access surplus case. There, I think the factual situation is very different from what we have here. You had a situation in that case where the two individual defendants were co-managing properties. They owned the properties held in community property. And there was evidence that at least one of them engaged in some level of wrongdoing. And so I think in that case, there was substantial evidence supporting the fact that supporting joint and several liability to those two defendants. But we don't have that situation here. I think USIC and the district court has been focusing on very limited deposition testimony that Mr. Bonnie gave in the underlying lawsuit of various roles relating to the exotic car tour at issue here, maintenance and safety checks, and somehow made the leap in the conclusion that all three of them could be jointly and severally liable based on that limited testimony. The other two groups, entities that were the subject of the settlement were Bonnie Auto Group and Club Sportiva. Is that right? That's correct. Are those still going concerns? Are they judgment proof? I believe they are still in business. They're not appellants here. They are not. Only Mr. Bonnie is appealing. OK, I'm sure your friend on the other side may tell us if there's any significance to this feature of the case in terms of just recovering the million dollars. Going back to the relationship between the three, though, I think the problem here is that there's no evidence of what Mr. Bonnie individually did in his individual capacity such that he could face exposure in the way that USIC is trying to do here. He was a director and officer of these two companies. He only acted in that capacity. USIC hasn't demonstrated otherwise other than that limited deposition testimony that these two companies were involved in the incident. And from there, the district court concluded relying on access that somehow USIC met its implied or met its burden to conduct an allocation. But again, we think access surplus is distinguishable on the facts, given the substantial evidence in that case to hold all three of those defendants liable. I would point out here that, you know, there's case law setting forth the principle that simply because you're an owner or an officer and a director of a business without more does not make one personally responsible for the obligations of those entities or torts. Something more than they show that demonstrate they all should be pierced. I mean, they haven't we haven't got to that point, but they could they could make that argument. And I think that is our point, is that they didn't demonstrate that the corporate veil was here. So to hold Mr. Bonnie liable in the underlying action, there's only two ways to do that. One, they need to demonstrate that there was personal misconduct, that he conducted an initial intentional tort in his individual capacity and to alter ego to be able to pierce the veil of Bonnie Otto and Club Sportiva to get to him individually. But there's been no evidence of that. Either of those situations. So that's part of the problem here is that it appears that the court is implicitly holding that the veil has been pierced because they it is holding Mr. Bonnie individually liable somehow. But there's been no evidence to support that here. Again, it's only the limited deposition testimony. So that can't be enough to demonstrate how he benefited from the indemnity payment. Unless the panel have further questions, I'd like to reserve my remaining time for rebuttal. All right. Thank you, counsel. May it please the court. I am John Peer, counsel for plaintiff appellee United Specialty Insurance Company. And there are really are three published decisions that deal with the key issue here. That is when an insurance company makes a policy limit settlement payment is able to establish that there's no coverage under the policy and then seeks recoupment in a situation where there are multiple insured. And there's the third case, which was filed after our brief was due, is the Mesa Specialty Underwriters case versus Allergan. But for our purposes here, there's a common theme that runs through all three. It runs through the L.A. Sound U.S.A., the Axis versus Reynoso, and the Mesa Specialty Underwriters, Mesa Underwriters specialty case. And the common theme is that all three courts look to who actually benefited as a result of the insurer's payment and how much did they benefit. That's the focus in L.A. U.S.A., U.S.A. insured L.A. Sound U.S.A. and two officers and directors who were also sued in an individual capacity. And in L.A. Sound, the settlement was not a global settlement. It left Mr. Hsu and Mr. Gee still on the potentially on the hook for their individual liability. And the court said in that context, we need to say Paul needs to figure out who actually benefited here from the settlement. The same is true in the Axis versus Reynoso matter. The court was focused on whether Linda Reynoso, who had played a relatively minor part in the liability situation in that case, whether she should be, whether she benefited from Axis' settlement and whether she benefited to the extent of the full amount of the settlement. The same is true in the Mesa specialties where there was a policy limit payment by the insured that established no coverage. And it was the named insured Allergan and two other additional insureds. And the focus was on should Allergan, named insured, be responsible for the full million dollar payment, settlement payment. And the court there again looked to the key question, who benefited and how much did they benefit? In our case, as Judge Freeman Lapson found, that is a complete nonissue. Why? Sia Banney was the sole owner of Banney Auto Group. He's the sole owner of Club Sportiva, and he's the only individual defendant that faced liability to the right plaintiffs. There's only one person that benefited from United Specialties payment of its full one million dollar policy limit for a claim that it did not owe that on, and that's Sia Banney. And as I think Judge Bress kind of hinted at, our concern here is that United Specialty, even though it paid a million dollars that it didn't owe, is potentially not going to be able to recover a penny in this situation. And that's, and I guess that's typified by the fact that the only claim here is by Sia Banney trying to avoid the joint and several findings of Judge Lapson Freeman. Here, there's no claim by Banney Auto Group that it wasn't jointly or severally liable. There's no claim by Club Sportiva that it wasn't jointly and severally liable. They're on the hook for the full million dollars. Why would Sia Banney be the one who's trying to avoid this? And it's only because, as I think Judge Bress hinted at, is we're convinced that we won't see a penny of this. No, that's concerning. I agree with you. That's concerning. I guess the issue, though, is that, is it enough that Sia Banney was the owner, the officer of a closely held corporation? That was also true in LA Sound. And there, the court said, well, we need a more detailed analysis, a more detailed parsing of the underlying litigation. So how do you distinguish that case from this one? Because, I think because here, Sia Banney was named individually. He... But wasn't that true in LA Sound also? In the underlying complaint, yes. In the underlying complaint, it was the alleged joint and several liability. And Mr. Banney now argues that United Specialty should carry the burden to establish that the corporate veil could have been pierced in the underlying action. But that's what should have happened. Not here. That's what should have happened in the underlying action. And as there was a nine month period from the time that Sia Banney was named individually and was alleged to be jointly and severally liable for the damages before the settlement occurred, when the settlement occurred, United Specialty had no alternative. We had to pay the million dollars to avoid potentially much greater exposure had we not settled. And we had to settle on behalf of all three defendants, or it would have been a classic case of bad faith. So because plaintiff's Cuba's counsel in the underlying action took no steps to have Mr. Banney dismissed from that action at the time of settlement, we had to settle for all three. And the fact that they now ask, OK, let's go back now and prove what could have been should have been proven in the underlying case, namely that Mr. Banney was personally liable here. So I think it's an unfair and an unnecessary burden, especially in the context where he's the beneficiary for all three. As we argued in our brief, and it's never been disputed, he's the sole owner of the other two entities, along with his own personal thing. And I think that was the case in Axis versus Renoso, where they focused on the close relationship between Linda Renoso and her husband and the corporation, the Proud American Corporation. And they said, no, she benefited to the extent of $800,000, which was the policy limit there. That's true. I mean, the other thing there, though, was that there was a concession by Linda that she was jointly and separately liable, which we don't have here. That is, in fact, the case. That's true. In L.A. Sound, was there a determination of joint and several liability? No. And, in fact, I think the Axis court, and I know the Mesa Specialty Court makes that point. They say the court assumed joint and several liability. So you think that distinguishes? Here there was a finding of joint and several liability. Counsel, let me ask you this. Counsel. I beg your pardon? Counsel. So do you think that distinguishes L.A. Sound from this case? The fact that there is joint and several liability in this case, and there was not in L.A. Sound? I think it absolutely does. That was the point I was just going to make, Judge Rawlinson. That is, in fact, a singular difference here, because Judge Lamson had all this information, and she did say they were jointly and separately liable. So I don't think there's any dispute about it. Well, she did say that. The question, though, is whether that is based on enough evidence. Well, we think it is sufficient. The evidence was sufficient, and we cited the deposition testimony that Mr. Banny gave in his deposition in our briefing. Undisputed, he said that these were closely incorporated. Banny Auto and Club Sportiva were intimately involved. He uses the phrase. Did he sign the settlement agreement on behalf of all three entities? Yes, Judge, they did. It was specifically broken out. See a Banny individually for himself. See a Banny for Banny Auto Group. See a Banny for Club Sportiva. And that point was made at the time of the settlement. He knew he was being released individually, and that was a big benefit to him. If this matter had gone forward, we had a 46-year-old, a successful businessman, father of three, that had a family, had a great wrongful death claim, and had United Specialty, even though it was convinced that it did not owe his coverage, we had to step in. And frankly, the only reason why that occurred is because soon after the right action was tendered to United Specialty, and we agreed to defend under a reservation of rights, we filed this action to establish the absence of coverage. And the only reason why United Specialty didn't get the response, the absence of coverage, that it got later from Judge Freeman-Labson was because Banny Auto Group stepped in and moved to stay our coverage action until the end of the underlying litigation. And we had a lengthy argument, like a two-hour argument. Judge Labson finally decided, yes, the action had to stay under California law, which delayed the United Specialty's award of no coverage, a decision of no coverage, which would have avoided this whole problem. So it forced us to pay a million bucks to resolve this matter, and thereby let Mr. Banny off the hook. Whether it be in the form of Banny Auto Group, which he solely owned, or Club Store Tivo, which he solely owned, or himself, it let him off the hook from paying the exposure that United Specialty took care of by paying our policy limit. So in that context, we ask that you affirm the award. There was sufficient evidence before Judge Labson of this situation where the two entities were mixed. Even Mr. Banny talks about the two entities that he owned being mixed in their responsibility for the death of Mr. Wright. And we therefore ask you to affirm that judgment so that we can avoid a situation where the only person that benefited from United Specialty's payment that it did not owe of a million dollars is Cia Banny. Thank you, Your Honor. Thank you. Rebuttal. Thank you, Your Honor. I just wanted to address a few points that Mr. Peer raised. In discussing the three cases, the common theme that he purports to draw from these cases, who benefited and how much they benefited, that second part of the equation has never been analyzed. And I think that's one of our main points here is that though LA Sound acts as surplus, they require that analysis. But it wasn't done. How much was the exposure that each of the three defendants faced in the underlying action? There was no- Counsel, may I ask you this? Would that analysis be required if they were joint, if there were joint and several liability? I think so, yes. Why? Why would that analysis be required if each of them was 100 percent responsible for the damages? That's what joint and several liability means. So why would that analysis be required if there were joint and several liability? Well, I guess to start off with, I don't believe there was a finding in the underlying case that there was joint and several liability against the three defendants. I think that's part of the issue here because the case was settled before the merits were determined. Well, I thought the district court said that there was joint and several liability. Joint and several liability for the reimbursement, but not for the underlying claims. And that the joint and several liability portion is also being challenged on the appeal here today. Right. But if the district court said there's joint and several liability and there is ample evidence in the record to support that, would you lose? No. And I'll explain. I believe access surplus case explains this. There's a portion of that that would bring to the court's attention. It says, nevertheless, and this is on the Pennside 195, nevertheless, that there might be joint and several liability does not mean in the portion should not be considered. It only suggests, as we conclude in this case, that the apportionment results in joint and several liability to the insurer. And of course, in some cases, the joint and several liability might only be asked to some claims or to only certain kinds of damages. So even in the situation where joint and several liability applies, allocation is still necessary. But our position is that joint and several liability does not apply because there was not substantial evidence or any sufficient to lead to that finding. Counsel, what are we to make of the fact that Mr. Bonney signed individually and on behalf of both companies? What are we to make of that? That he's getting. That he's settling the case, however, on behalf of himself individually and on behalf of the companies. I believe so. But the issue is, at least in the reimbursement context, an analysis needs to be done as to how much liability exposure did he actually benefit from this settlement? In my example that I mentioned earlier, our belief is that it is zero and he would be unfairly subsidizing the other two entity defendants who more likely than not faced higher exposure and liability. Again, going back to the principles that simply because you own a company or are directors and officers in the company does not necessarily mean that you are individually liable. And that's part of the issue here in the underlying case. He signed the settlement individually. So there's no question that he benefited individually. So I don't think that's a valid point. I think the question is, how much did he benefit? And the answer to that, in our opinion, is that he did not benefit based on the case law here. All right, counsel, you've exceeded your time. Are there any questions from the panel? Not from me. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. That completes our calendar for the day and for the week. We are adjourned.
judges: GOULD, RAWLINSON, BRESS